UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| FERNANDO SILVA DE SOUZA, | ) | |
| Petitioner, | ) | |
| v. | ) | Civil Action No. 14-13788-DJC |
| FANIA LUIZA NEGRI and JORGE NOBRE SINOURA, | ) | |
| Respondents. | ) | |

## MEMORANDUM AND ORDER

CASPER, J.                                                                                                           February 19, 2015

### I.      Introduction

Petitioner Fernando Silva de Souza ("de Souza") seeks an order from this Court awarding costs and fees for expenses incurred in securing the return of his minor son, G.N.S., to Brazil pursuant to the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. § 9007(b)(3) (formerly 42 U.S.C. § 11607(b)(3)). D. 46. Respondents Fania Luiza Negri ("Negri") and Jorge Nobre Sinoura ("Sinoura") (collectively, the "Respondents") oppose de Souza's motion. D. 49. For the reasons discussed below, the Court ALLOWS IN PART the motion.

### II.     Factual and Procedural History

The full factual and procedural history was recited in this Court's prior Memorandum and Order allowing de Souza's petition, D. 41 (De Souza v. Negri, No. 14-cv-13788-DJC, 2014 WL 7330770, at *1 (D. Mass. Dec. 19, 2014)).

G.N.S. is the son of de Souza and Negri. D. 41 at 2. De Souza currently lives in Águia Branca, Brazil. Id. at 3. Negri lived in another district on the other side of the same city, but

1

now resides in the United States.  Id. at 3-4.  De Souza and Negri never married but they did live together in Águia Branca when G.NS. was born on January 20, 2009.  Id. at 2.  De Souza and Negri separated, however, when G.N.S. was a baby.  Id. at 3.  Nevertheless, both de Souza and Negri continued to play some role in G.N.S.'s upbringing in Brazil.  Id. at 3-4.  At no point, though, did de Souza give Negri permission to remove G.N.S. from Brazil.  Id. at 4.  All the same, on or about December 11, 2013, Negri took G.N.S. without permission to another part of Brazil, Curitiba, and ultimately, travelled with G.N.S. to the United States.  Id.  Once in the United States, de Souza had only limited contact with G.N.S.  Id. at 4-5.

After locating G.N.S., de Souza filed an emergency petition in this Court for the return of his son to Brazil pursuant to the Hague Convention on Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11,670, 22514 U.N.T.S. 89 ("Hague Convention" or "Convention") and its implementing legislation, ICARA, 22 U.S.C. §§ 9001 *et seq.*, on October 7, 2014.  D. 1.  On October 31, 2014, Negri and Sinoura filed their answers, D. 23, 24, and Negri moved to stay the proceedings for a period of six months pending resolution of an asylum application Negri filed on behalf of GNS.  D. 25.  The Court denied the Respondents' motion to stay on November 12, 2014.  D. 29.  Between November 14, 2014 and November 24, 2014, the Court conducted a two-day hearing on de Souza's petition.  D. 30, 36.  The Court issued a Memorandum and Order, ordering the Respondents to return G.N.S. to Brazil, on December 19, 2014.  D. 41.  On January 8, 2015, de Souza filed a motion to compel the Respondents' compliance with the Court's December 19, 2014 order, recounting that his efforts to arrange G.N.S.'s return to Brazil pursuant to the Court's order had not been effective.  D. 42.  In light of de Souza's filing, the Court entered an order requiring the Respondents to show cause by January 14, 2015 why the relief sought by de Souza should not be granted.  D. 43.  On January 14th, the

Respondents filed a response indicating that they had received authorization for G.N.S. to travel to Brazil and they had secured a plane ticket for him to do so on January 17, 2015. D. 44. The Court then ordered de Souza to file notice when G.N.S. arrives in Brazil, D. 45, which the petitioner did on January 21, 2015, noting that G.N.S. had arrived in Brazil on January 18, 2015. D. 47. De Souza subsequently filed a motion for costs, D. 46, which the Respondents oppose, D. 49. Specifically, de Souza now seeks $2,591.16 in costs and $134,774.50 in legal fees, totaling $137,365.66. D. 46 ¶ 5.

### III. Discussion

#### A. **Legal Framework**

"[T]he [Hague] Convention provides that upon ordering the return of a child, the court 'may, where appropriate,' also order the respondent to pay petitioner 'necessary' fees, costs, and expenses incurred as a result of the wrongful removal or retention." Mendoza v. Silva, 987 F. Supp. 2d 910, 914 (N.D. Iowa 2014) (quoting West v. Dobrev, 735 F.3d 921, 932 (10th Cir. 2013)). The ICARA, the Convention's implementing legislation, makes the provision of fees, costs and expenses mandatory. 22 U.S.C. § 9007(b)(3). The statute provides that "[a]ny court ordering the return of a child . . . shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees, foster home or other care during the course of proceedings in the action, and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate." Id.

Here, as this Court has noted previously, de Souza has prevailed and the prerequisite for an award has been established. See Hasan v. Hasan, No. 03-cv-11960-GAO, 2004 WL 57073, at *4 (D. Mass. Jan. 13, 2004) (noting that "[a]n award of the enumerated costs and fees is made mandatory by the plain language of the statute"). Nonetheless, "[t]wo issues remain: first,

3

whether the claimed expenses [are] 'necessary,' and second, whether an order against respondent would be 'clearly inappropriate.'" Whallon v. Lynn, No. 00-cv-11009-RWZ, 2003 WL 1906174, at *2 (D. Mass. Apr. 18, 2003)). The burden of proof to establish necessity is upon the Petitioner, de Souza. Guaragno v. Guaragno, No. 09-cv-00187-O, 2010 WL 5564628, at *1 (N.D. Tex. Oct. 19, 2010) report adopted and accepted, No. 09-cv-187-O, 2011 WL 108946 (N.D. Tex. Jan. 11, 2011). It is, however, the Respondents' burden to establish that a fee award would be "clearly inappropriate." See id.

To determine whether a fee award should be granted, the First Circuit has interpreted "the statute as giving the district court broad discretion in its effort to comply with the Hague Convention consistently with our own laws and standards." Whallon v. Lynn, 356 F.3d 138, 140 (1st Cir. 2004) (noting that the district court "has the duty . . . to order the payment of necessary expenses and legal fees, subject to a broad caveat denoted by the words, 'clearly inappropriate'"). The "clearly inappropriate" standard is "highly fact specific and involves an equitable balancing of several factors including financial circumstances." Kufner v. Kufner, No. 07-cv-046 S, 2010 WL 431762, at *5 (D.R.I. Feb. 3, 2010); see also In re S.E.O., No. 12-cv-2390-LTS, 2013 WL 4564746, at *2 (S.D.N.Y. Aug. 28, 2013) (quoting Psihoyos v. John Wiley & Sons, Inc., No. 11-cv-1416, 2013 WL 1285153, at *2 (S.D.N.Y. Mar. 29, 2013)) ("balancing a variety [of] factors, including frivolousness, motivation, objective unreasonableness (both in factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence"); Mendoza, 987 F. Supp. 2d at 914 (quoting Ozaltin v. Ozaltin, 708 F.3d 355, 375 (2d Cir. 2013)) (noting that "[t]here is no precise rule or formula for making these determinations, but instead equitable discretion should be exercised in light of the [relevant] considerations").

In particular, "the financial plight of the respondent is an important factor to consider." Kufner, 2010 WL 431762, at *2 (internal quotation marks and citations omitted); see also Whallon, 356 F.3d at 139 (citing Rydder v. Rydder, 49 F.3d 369, 373–374 (8th Cir. 1995) (considering financial means to reduce fee award 46 percent); and Berendsen v. Nichols, 938 F. Supp. 737, 739 (D. Kan. 1996) (15 percent reduction)). In addition, whether "the respondent had a reasonable basis for thinking at the time of removing the children to the United States . . . that her actions were consistent with [the law of the country of habitual residence], that belief, even if mistaken, is a relevant equitable factor when considering whether a costs award is appropriate." Mendoza, 987 F. Supp. 2d at 915 (alteration and omission in original) (internal quotation marks and citation omitted). Furthermore, an award of fees may be deemed excessive "if it prevents the respondent-parent from caring for the child." Id. (quoting Norinder v. Fuentes, 657 F.3d 526, 536 (2d Cir. 2011)).

Notably, however, "the fact that the respondent may already owe substantial fees to his or her own attorney does not make an award of the petitioner's attorney's fees 'clearly inappropriate.'" Mendoza, 987 F. Supp. 2d at 915 (citation omitted). "Nor does the fact that the winning petitioner's attorneys provided their services *pro bono* make an award of fees against the respondent 'clearly inappropriate.'" Id. (citing Cuellar v. Joyce, 603 F.3d 1142, 1143 (9th Cir. 2010) (finding that withholding fees from *pro bono* counsel might discourage *pro bono* representation and undermine the Convention's goal of speedy return) and Vale v. Avila, No. 06-CV-1246, 2008 WL 5273677, at *2 (C.D. Ill. Dec. 17, 2008) (finding an award of attorney fees "clearly inappropriate" where counsel represented petitioner under a *pro bono* arrangement, but acknowledging that *pro bono* representation "does not, by itself, render an award of attorney fees clearly inappropriate" and is only a "factor that cuts against any such award")).

B. **Analysis**

Weighing the equitable considerations here, the Court finds as follows. As to the first consideration – whether the fees and expenses claimed by de Souza are necessary – the Court concludes that, with one exception, they are. The litigation of this matter spanned from the preparation and filing of de Souza's petition in October 2014 through January 2015. It proceeded on an expedited basis, given the nature of the claim, with a show cause hearing in October 2014, D. 20, a hearing on the Respondents' motion to stay and pretrial conference on November 12, 2014, D. 29, and an evidentiary hearing over the course of two days in November 2014, D. 30 and 36. (There was also a telephone conference with counsel on November 21, 2014 because the second day of the bench trial had to be postponed in light of a death in the family of counsel for the Respondents, D. 34). Even after the Court issued its Order allowing the petition, counsel for de Souza sought the aid of the Court to effect the Respondents' compliance with the Order. D. 42.

Having reviewed counsel's billing records, the Court does not agree that the attorneys' fees and costs are excessive as the Respondents contend. The Court concludes that the attorneys' rates were reasonable, ranging from $570/hour for the single partner on the case to $345 to $515/hour for the associates (with three associates doing the bulk of the work). The number of hours for litigating this case were also reasonable give the nature of the claim, the filings required and the necessity of preparing for and conducting an evidentiary hearing. The Court, however, does not find that all of the time billed for the *pro hac vice* admission for two attorneys and ECF registration (a total of 9.55 hours, covering 14 entries on the legal bills) was necessary.[1]

---

[1] The Court reduced two of these entries – dated October 9, 2014 and October 20, 2014 – by 50% because the time was only partly billed to *pro hac vice* admission and ECF registration. D. 46-1 at 6, 9.

Although, by the Court's estimation, the attorneys admitted *pro hac vice*, D. 22, together did 41% of the legal work on de Souza's behalf and, therefore, were a critical part of his legal team, the Court cannot conclude on this record that all of the time attributed to these tasks (even when they were done by paralegals, charging at a lower rate of $285/hour) was necessary. Accordingly, the Court reduces the total attorneys' fees claimed by $2751.75. The Court further finds that given the nature of this case--notably the need for use of interpreters and residence of de Souza in Brazil--the expenses, the bulk of which were for court fees, interpreter services (a service that benefitted both parties at the evidentiary hearing), Westlaw use and international calls, were necessary. Accordingly, the total amount of attorneys' fees (as reduced) and costs is $134,613.91.

The more challenging question is whether ordering the Respondents to pay these fees and costs is clearly inappropriate. Respondents contend that such an order would be inappropriate given their financial condition and their current U.S. residence where neither is authorized to work. The Court is aware that the Respondents have filed for asylum, which reflects their current citizenship status here. However, although their opposition to de Souza's motion is based largely upon their financial condition, they provide no supporting documentation or evidence of same.

In addition to financial condition, the Court has also considered a number of other factors in determining the appropriateness of imposing de Souza's fees and costs on the Respondents. First, the Court has considered the merits of the petition. For the reasons articulated in the Court's December 19th Memorandum and Order, the petition was meritorious. Although the Respondents maintained that the return of G.N.S. to Brazil would put the child at grave risk of harm by de Souza, the evidence presented at the hearing did not support this claim and, unlike

7

Mendoza, 987 F. Supp. 2d at 916, this was not a "very close case." Id. Second, the Court has nevertheless considered the Respondents' professed good faith belief that their actions were justified given their concerns about G.N.S.'s safety. Third, the Court has considered the degree to which the Respondents have contributed to the fees and costs incurred by de Souza in this litigation. Despite the Court's Order of December 19, 2014 ordering the return of the child to Brazil, such return was not arranged until after de Souza sought further aid of the Court on January 8, 2015. Finally, the Court has considered the fact that de Souza's counsel represented him *pro bono*. Such *pro bono* status certainly does not bar the award of attorneys' fees and the Court has considered that the imposition of attorneys' fees can serve to encourage *pro bono* representation in Hague Convention cases, but also to discourage the wrongful removal and retention of children from their habitual residences. Given the reasonable, yet sizable amount of the fees (driven more by the hourly rate than the number hours), the costs and fees, even as reduced, shall still serve both purposes.

Having weighed all of these considerations, the Court concludes that they do not warrant the wholesale reduction of the relief that de Souza seeks. Upon reflection of these factors, but primarily in recognition that the Respondents' ability to work and presently earn money in the U.S. may be limited at this time, the Court reduces the award by 33% to $90,191.32.

## IV. Conclusion

For the foregoing reasons, the Court ALLOWS IN PART de Souza's motion for costs and fees, D. 46.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge